THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AUDRA PATTERSON, Individually and on Behalf
of All Others Similarly Situated                                                                PLAINTIFF

v.                           Case No. 4:19-cv-00918-KGB

AMERICAN INCOME LIFE INSURANCE CO. and
AARON BLAKE RALSTON                                                                          DEFENDANTS

**ORDER**

Before the Court are the motion to compel individual arbitration and stay the case filed by defendant American Income Life Insurance Company ("AILIC") (Dkt. No. 6) and the motion to compel individual arbitration filed by defendant Aaron Blake Ralston (collectively with AILIC, "defendants") (Dkt. No. 9). Also before the Court is AILIC's motion for leave to file reply in support of its motion to compel individual arbitration and stay the case (Dkt. No. 13). AILIC also filed a notice of supplemental authority related to issues raised in the pending motions (Dkt. No. 19). For the following reason, the Court grants the motion for leave to file reply, has considered the reply, grants AILIC's motion to compel individual arbitration and stay the case, and grants in part and denies in part Mr. Ralston's motion to compel individual arbitration.

**I.     Factual And Procedural History**

On December 19, 2019, plaintiff Audra Patterson, individually and on behalf of all others similarly situated, filed a complaint against her former employer, AILIC, and Mr. Ralston, the owner of a branch of AILIC, alleging violations of the minimum-wage provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201 to 11-4-222 (Dkt. No. 1). Specifically, Ms. Patterson alleges that she worked as an insurance sales worker for a branch of AILIC owned and operated

by Mr. Ralston (*Id.*, ¶¶ 13, 19–20). Ms. Patterson explains that, upon hire, defendants required her and other similarly situated new hires to attend a five-day training, the purpose of which was to familiarize new hires with defendants' life insurance plans, teach them sales tactics, and explain how they would be paid (*Id.*, ¶¶ 21–23). Ms. Patterson claims that, because defendants classified her and similarly situated insurance sales workers as independent contractors, they were not paid for time spent in training (*Id.*, ¶¶ 24–25). Ms. Patterson further claims that her "and similarly situated insurance sales workers' relationships with Defendants followed the normal path of employees, not independent business owners." (*Id.*, ¶ 26). According to Ms. Patterson, although she "and similarly situated employees may have been classified as exempt from the FLSA for purposes of their regular sales duties," they "were neither engaging in exempt duties nor earning commissions during the week they spent in training" (*Id.*, ¶ 31). Ms. Patterson insists that defendants "knew or should have known" that she "and similarly situated employees were working hours for which they were not compensated." (*Id.*, ¶ 32).

On February 18, 2020, AILIC filed a motion to compel individual arbitration and stay the case, contending that Ms. Patterson entered into a valid arbitration agreement with AILIC that covers all claims in this action (Dkt. No. 6). That same day, Mr. Ralston filed a motion to compel individual arbitration, taking the position that Ms. Patterson's arbitration agreement with AILIC also covers the claims asserted against him (Dkt. No. 9). Ms. Patterson filed a response in opposition to the motions to compel individual arbitration on March 2, 2020 (Dkt. No. 11). No motion for conditional certification has been filed.

In support of its motion to compel individual arbitration, AILIC submits the affidavit of Debra Gamble, Senior Vice President of Agency for AILIC (Dkt. No. 6-1, Declaration of Debra Gamble). Ms. Gamble avers as follows. Ms. Patterson contracted to sell AILIC insurance to

prospective customers in Arkansas (*Id.*, ¶ 3). In the usual course of its business, AILIC maintains a file for each of the independent sales agents who contract with the company, and Ms. Gamble reviewed Ms. Patterson's agent file (*Id.*, ¶¶ 2–3). On February 20, 2019, AILIC sent an invitation from AILIC's Agent Appointment Automation System to Ms. Patterson's e-mail address, inviting her to complete her on-boarding paperwork and providing her with a link to the Agent Appointment Automation System (*Id.*, ¶ 4).[1] AILIC's Agent Appointment Automation System allows the user to complete electronically all on-boarding forms, including a sales agent contract (the "Agent Contract") (*Id.*, ¶ 5). The user is required to input her signature into the automation system and to indicate her agreement by assenting to the placement of that signature on each on-boarding document that requires a signature, including the Agent Contract (*Id.*). Ms. Patterson electronically signed her Agent Contract on February 21, 2019 (*Id.*, ¶ 6).[2] The entire Agent Contract was presented for Ms. Patterson's review, and Ms. Patterson was required to agree by assenting to the placement of her signature on the Agent Contract (*Id.*). Ms. Patterson's Agent Contract was countersigned by AILIC on March 6, 2019, and became effective on that date (*Id.*, ¶ 7). Ms. Patterson's Agent Contract was terminated effective June 17, 2019 (*Id*, ¶ 8).[3]

The Agent Contract provides, as relevant here, that:

**ARBITRATION**

> In the event of any dispute or disagreement, whether arising out of or relating to this Contract or otherwise, . . . the Parties to the dispute shall use their best efforts to settle such disputes. . . .

---

[1] A copy of AILIC's invitation to Ms. Patterson is attached as part of Exhibit B to the Declaration of Debra Gamble (Dkt. No. 6-3, at 2–3).

[2] A copy of the Agent Contract executed between Ms. Patterson and AILIC and Mr. Ralston is attached as part of Exhibit B to the Declaration of Debra Gamble (Dkt. No. 6-3, at 4–12).

[3] A copy of AILIC's termination letter is attached as Exhibit C to the Declaration of Debra Gamble (Dkt. No. 6-4).

> If the Parties do not reach a just solution by negotiation as described above, then upon written notice by one Party to another, all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of any state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on an alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration under the substantive rules of the Federal Arbitration Act ("FAA"), to be administered by the American Arbitration Association ("AAA") in accordance with its Commercial Rules then in effect. . . . Arbitration shall be on an individual, not a class, collective, representative, or private attorney general basis. . . . Aside from issues relating to arbitration or the enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed by and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules.

(Dkt. No. 6-3, at 7).

The final page of the Agent Contract includes the following acknowledgment, just above the signature line: "I HEREBY ACKNOWLEDGE THAT I HAVE READ THE FOREGOING CONTRACT IN ITS ENTIRETY, INCLUDING THE ARBITRATION PROVISION, THE SPECIAL NOTICE ACKNOWLEDGMENT ATTACHED HERETO AS EXHIBIT A, AND AGREE TO ALL CONTRACT TERMS." (*Id.*, at 8). Ms. Patterson signed her Agent Contract beneath this acknowledgment (*Id.*). Mr. Ralston, who is also a party to the Agent Contract, signed below Ms. Patterson, and Ms. Gamble signed below Mr. Ralston on behalf of AILIC (*Id.*).

## II.     Standard Of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies in this case. The FAA provides, as relevant here, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described

4

this provision as reflecting both "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and "the fundamental principle that arbitration is a matter of contract," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In line with these principles, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

"[T]hreshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To that end, the Court's task is to determine: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the terms of that agreement. *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537 (8th Cir. 2002); *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). While "[a]ny doubts

5

concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. 1, 24–25 (1983), the party seeking to compel arbitration carries the burden to prove a valid and enforceable agreement, *see Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019).  "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted."  *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).

Finally, because the parties rely on matters outside the pleadings, the Court will review the motions to compel individual arbitration under the standards for summary judgment.  *See Neb. Mach. Co. v. Cargotec Sols.*, LLC, 762 F.3d 737, 741-42 (8th Cir. 2014).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

The party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019).  If the moving party carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come

forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

**III.   Analysis**

Ms. Patterson raises only a single argument in opposition to defendants' motions to compel individual arbitration—that is, that the arbitration clause does not survive termination of the Agent Contract. Specifically, Ms. Patterson contends that "the Contract between the parties is silent as to whether the arbitration clause survives termination of the Contract." (Dkt. No. 11, at 4). Noting that AILIC drafted the Agent Contract, Ms. Patterson insists that, "[w]here Defendant intended a provision to survive termination of the Contract, Defendant included express language to that effect." (*Id.*). Ms. Patterson offers four such examples:

- Under the heading "Confidential Information," the Agent Contract states that "the obligations of this section survive termination of this Contract." (Dkt. No. 6-3, at 6).

- Under the heading "Non-Competition," the Agent Contract prohibits Ms. Patterson from engaging in certain specified conduct "[f]or a period of two (2) years after termination of this Contract . . ." (*Id.*, at 7).

- Under the heading "Deportment," the Agent Contract provides that Ms. Patterson "shall immediately forfeit her . . . right to receive any commissions due or to become due under this Contract or any other agreement with the Company if [she] at any time, either before or after termination of this Contract," engages in certain specified conduct. (*Id.*).

- Under the heading "Protected Health Information," the Agent Contract specifies that "the obligations contained herein survive termination of this Contract." (*Id.*, at 8).

Citing *Larry Hobbs Farm Equipment, Inc. v. CNH America, LLC*, 291 S.W.3d 190, 195 (Ark. 2009), for the proposition that "[t]he phrase *expressio unius est exclusio alterius* is a fundamental principle of statutory construction that the express designation of one thing may be properly construed to mean the exclusion of another," Ms. Patterson reasons that "Defendant's

7

explicit reference to survival of some provisions coupled with its silence regarding survival of the arbitration provision clearly indicates that the parties did not intend for the arbitration agreement to survive termination of the Contract." (Dkt. No. 11, at 5). According to Ms. Patterson, "[t]his is basic contract construction and is sufficient to overcome the presumption in favor of survival of the arbitration agreement." (*Id.*, at 5–6).

Finally, Ms. Patterson observes that, under the heading "Entire Agreement," the Agent Contract specifies that "[t]his Contract, the Special Notice Acknowledgment attached hereto as Exhibit A, and the applicable commission schedules represent the entire understanding of the parties with respect to the subject matter hereof and supersedes and terminates any prior or contemporaneous agreements, whether written or oral, in which the Agent and the Company are parties except as described in this paragraph." (*Id.* at 8).

Ms. Patterson's arguments, while not entirely without merit, are insufficient to overcome the presumption in favor of post-expiration arbitration of disputes "unless negated expressly or by clear implication." *Koch v. Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir. 2008) (quoting *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 191 (1991)); *see also Litton*, 501 U.S. at 208 ("We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement."); *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 253 (1977) ("[I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract"); *W. Liberty Foods, L.L.C. v. Moroni Feed Co.*, 753 F. Supp. 2d 881, 886 (S.D. Iowa 2010) ("Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to

survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption . . . .").

Ms. Patterson relies almost entirely on the canon of construction *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") and the doctrine of *contra proferentem* ("interpretation against the draftsman").[4] The interpretive cannon *expressio unius est exclusio alterius* provides that the "expressi[on] [of] one item of [an] associated group or series excludes another left unmentioned." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (third alteration in original) (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002)). While *expressio unius* is a well-established interpretive cannon, it is less than helpful in determining the intent of the parties relative to the survival of the arbitration clause. *See Huffman v. Hilltop Co., LLC*, 747 F.3d 391, 397 (6th Cir. 2014) (rejecting the *expressio unius* argument that the omission of an arbitration clause from a survival clause in an agreement constituted a clear implication that the parties intended the arbitration clause to expire with the agreement); *W. Liberty Foods*, 753 F. Supp. at 888 (S.D. Iowa 2010) (rejecting an *expressio unius* argument and cautioning that "focusing on only one maxim of contract interpretation and construction is inadequate in determining the intent of the parties relative to the survival of the arbitration clause"). This is especially so because contractual obligations other than the obligation to arbitrate a dispute cease,

---

[4] "As a threshold matter," AILIC objects to the Court's consideration of "provisions extrinsic to the arbitration agreement," reasoning that Ms. Patterson's "attempt to reach *outside* of the arbitration agreement is analytically improper and contravenes repeated guidance from the Supreme Court that arbitration agreements are *severable* contracts that should be analyzed *separately* from any surrounding language." (Dkt. No. 13-1, at 4, 5). The Court is unpersuaded by this argument. In determining the intent of the parties relative to the survival of the arbitration clause, the Court need not read the provision in a vacuum. Rather, the Court may properly consider the other portions of the Agent Contract to the extent that they demonstrate the parties' intent with respect to the arbitration agreement. The severability of the arbitration clause is a separate question not before the Court at this time.

9

in the ordinary course, upon termination of the contract. *See Litton*, 501 U.S. at 207. Thus, the inclusion of survival language in four contractual provisions, but not the arbitration clause, is not particularly illuminating as to whether the parties intended the arbitration provision to survive the termination of the contract.

Under the doctrine of *contra proferentem*, the court construes ambiguous contract language against the drafter. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997). However, "[u]nlike contract rules that help to interpret the meaning of a term, and thereby uncover the intent of the parties, *contra proferentem* is by definition triggered only after a court determines that it *cannot* discern the intent of the parties." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019). That is not the case here.

Ms. Patterson's Agent Contract requires her to arbitrate "all disputes, claims, questions and controversies of any kind or nature arising out of or relating to" the Agent Contract, including "any alleged violation of any state or federal statute, regulation, law or order of any kind" and her "relationship as an independent contractor and not an employee (including, without limitations, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on an employment relationship)." (Dkt. No. 6-3, at 7). This is a broad arbitration clause. *See Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." (citing *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 819 (8th Cir. 2015))). Both the Supreme Court and the Eighth Circuit have interpreted similarly broadly worded arbitration clauses to cover disputes that *arose* under an employment contract but were brought *after* the contract's termination. *See Nolde*, 430 U.S. at 255 (1977) (where a labor union exercised its right to terminate a collective-bargaining agreement, which provided for severance pay for employees and required arbitration of "any

10

grievance" arising between the parties, and the employer rejected the union's demands that it arbitrate the issue of whether the workers were entitled to severance pay on the ground that its obligation to do so terminated with the collective-bargaining agreement, rejecting the employer's argument and holding that the union's claim for severance pay under the expired collective-bargaining agreement was subject to resolution under the arbitration provisions of that contract); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1290 (8th Cir. 1984) ("The language of the agreement is broad and the term 'arising out of' contemplates that for some controversies the arbitration agreement will survive the employment relationship.").

Additionally, "[a]pplying the general principle of contract construction that no provision of a contract should be interpreted in a manner that would render it surplusage," *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003), the Court observes that, because the arbitration clause covers, among other things, "claims for wrongful termination," which, by definition, could only be brought *after* the Agent Contract's termination, a finding that the arbitration clause does not survive the expiration of the Agent Contract would read certain portions out of the arbitration clause. *See also Phila, Indem. Ins. Co. v. Austin*, 383 S.W.3d 815, 820 (Ark. 2011) ("A construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions (citing *Cont'l Cas. Co. v. Davidson*, 463 S.W.2d 652 (Ark. 1971))); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 193 (Tex. 2002) ("[O]ur duty is to give effect to all contract provisions, and render none meaningless."); *Fowler v. Unionaid Life Ins. Co.*, 20 S.W.2d 611, 613 (Ark. 1929) ("Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument."). As Ms. Patterson's construction would render portions of the arbitration clause meaningless and mere surplusage, the Court

11

declines to adopt it. *See Medscript PBM, Inc. v. Procare PBM, Inc.*, No. 4:08CV0293 AGF, 2008 WL 4941002, at *6 (E.D. Mo. Nov. 17, 2008) (rejecting the plaintiff's argument that the arbitration agreement did not survive the termination of the contract because such an interpretation would "leav[e] wholly unaddressed, and presumably for resolution by the courts, any claim related to a breach that resulted in a termination").

Finally, the Court observes that, even if the intent of the parties relative to the survival of the arbitration clause was less clear, Ms. Patterson's reliance on a single interpretive cannon and a doctrine of last resort would not persuade the Court to set aside the presumption favoring post-expiration arbitration of disputes. By its ruling here, the Court does not mean to suggest that an *expressio unius* argument could never satisfy the "express[] or . . . clear implication" standard set forth in *Litton* and *Koch*. For example, the Court might have reached a different conclusion if the parties included survival language in every provision of the Agency Contract except for the arbitration clause. *Cf. Huffman*, 747 F.3d at 398 ("[I]f the survival clause listed twenty-three of the agreement's twenty-four clauses—all but the arbitration clause—that might constitute a clear implication, and yield a different result."). That is not the case here. The strong presumption in favor of arbitration controls, and the Court, therefore, finds that the arbitration clause survives termination of the Agent Contract.[5] The Court will now briefly consider whether the arbitration clause covers the claims asserted in this action.

---

[5] Ms. Patterson also complains that, although "[t]he dispute resolution provision of the agreement required the parties to seek an informal, mediated resolution of disputes," defendants have "in no way sought to enforce the informal mediation element . . . ." (Dkt. No. 11, at 6). On this point, the Court agrees with defendants that Ms. Patterson left AILIC "no choice but to compel arbitration by skipping past the discussion process outlined in her Agent Contract." (Dkt. No. 13-1, at 7 n.2 (citation omitted)).

Having carefully reviewed the Agent Contract, the Court finds that it covers the claims asserted by Ms. Patterson against defendants. The scope of an arbitration clause is controlled by the parties' intentions, "but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*, 473 U.S. at 626 (1985). As noted above, the arbitration clause is broad in scope, and, in applying a broad arbitration clause, courts "ask whether 'the underlying factual allegations simply touch matters covered by the arbitration provision.'" *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 875 (8th Cir. 2018) (quoting *Unison Co.*, 789 F.3d at 818). Ms. Patterson wage-and-hour claims under the FLSA and AMWA "aris[e] out of or relat[e] to" her employment relationship with AILIC and, therefore, are covered by the Agent Contract.

The Court will compel Ms. Patterson's wage-and-hour claims to individual, as opposed to collective, arbitration. "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Thus, "arbitration agreements containing class waivers are enforceable in claims brought under the FLSA." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013). Ms. Patterson's Agent Contract provides that "[a]rbitration shall be on an individual, not a class, collective, representative, or private attorney general basis." (Dkt. No. 6-3, at 7). This class- and collective-action waiver is enforceable, and Ms. Patterson does not argue otherwise.

Finally, although the Court will compel Ms. Patterson to arbitrate her wage-and-hour claims against defendants on an individual basis, it will stay, rather than dismiss, this action pending the conclusion of the arbitration proceedings. *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties *stay the trial* of the action until

such arbitration has been had . . . ." (emphasis added)).  The Court acknowledges that, although "[t]he FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it," district courts may rely upon a judicially created exception to this rule and, in their discretion, "dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration."  *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011).  However, because a demand for arbitration does not toll the statute of limitations, *see Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 889 (8th Cir. 2015), the Court will "exercise its discretion to stay this case to preserve a forum for redress in the event that the arbitration fails to resolve the claims."  *Steadfast Ins. Co. v. Frost Bank*, No. SA-17-CV-1222-XR, 2018 WL 3865415, at *2 (W.D. Tex. Aug. 14, 2018).

### IV. Conclusion

For the foregoing reasons, the Court grants the motion for leave to file reply (Dkt. No. 13) and directs AILIC to file its reply brief within 14 days from the entry of this Order.  To resolve the pending motions, the Court has considered the reply (Dkt. No. 13-1).  The Court also grants AILIC's motion to compel individual arbitration and stay the case (Dkt. No. 6) and grants in part and denies in part Mr. Ralston's motion to compel individual arbitration (Dkt. No. 9).  Specifically, the Court denies Mr. Ralston's motion to the extent that it requests that the Court dismiss, rather than stay, the case; in all other respects, the Court grants Mr. Ralston's motion.  The claims asserted by Ms. Patterson are stayed pending the conclusion of the individual arbitration proceedings.  The parties are ordered to proceed to arbitrate this dispute in accordance with the terms of the Agent Contract and consistent with the terms of this Order.  Finally, the parties are each directed to file a status report with the Court within 14 days of receiving the arbitration decision.

It is so ordered this 30th day of October, 2020.

_____
Kristine G. Baker
United States District Judge